IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SAMUEL PAINTER,[1] | § | No. 176, 2019 |
| | § | |
| Petitioner Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. CN14-02909 |
| | § | |
| LOUISE PAINTER, | § | Petition Nos. 18-33283 |
| | § | 18-35950 |
| Respondent Below, | § | 19-06459 |
| Appellee. | § | |
| | § | |

Submitted: October 11, 2019
Decided: November 25, 2019

Before **VALIHURA, VAUGHN**, and **TRAYNOR**, Justices.

### O R D E R

After consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     The appellant ("Father") filed this appeal from protection from abuse ("PFA") orders dated March 25, 2019; the Family Court's Supplementary Statement of Findings on Cross Petitions for Protection from Abuse issued that same day; and the Family Court's order dated April 9, 2019, denying Father's motion for reargument.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2)     Father and the appellee ("Mother") divorced in August 2015. They had one child together (the "Child"). Since May 2014, the parties have filed numerous PFA petitions against each other, as well as an array of other motions and filings in the Family Court. On November 5, 2018, Mother filed a PFA petition (Petition No. 18-33283), on behalf of herself and the Child, in which she alleged, among other things, that Father was harassing her by texting her excessively, including sending demeaning and threatening messages. On December 4, 2018, Father filed a PFA petition (Petition No. 18-35950), on behalf of himself and the Child, in which he alleged that Mother sent him taunting text messages and tried to provoke him to violate a previous PFA.

(3)     The Family Court held a hearing on the petitions on March 25, 2019. Father, Mother, Mother's significant other, and Father's mother testified at the hearing. After considering the evidence, the Family Court found that on August 27, 2018, the Child's first day of school, Mother invited Father, via text message, to the Child's bus stop, which was just outside Mother's workplace. Father was subject to a no-contact order with Mother at the time. Mother indicated that she was not there and invited Father to take pictures of the Child. While Father was at the bus stop, Mother exited her workplace and approached Father, resulting in a verbal altercation among Mother, Father, and Mother's significant other, who was in a car nearby. Following this incident, Father texted Mother repeatedly for approximately seven

2

hours, expressing his beliefs that she was replacing him as the Child's father, was setting him up to violate court orders and get arrested, and had the Child baptized without his knowledge, among other subjects that were not within the scope of coparenting communications that were permissible under the existing no-contact order. On September 14, 2018, Father again sent Mother a barrage of lengthy, accusatory, and insulting text messages.

(4) Based on the evidence presented at the hearing, the Family Court found that Father's conduct was abusive and harassing and entered a two-year PFA order against Father. Among other things, the order prohibited Father from contacting Mother and required Father to remain at least 100 yards away from Mother, her residence, her workplace, and the Child's school. The court also awarded temporary custody of the Child to Mother and, in a contemporaneous order, established temporary visitation provisions, providing that Father would visit with the Child every Sunday afternoon at the visitation center. The court found that Mother's conduct did "not rise to the same level as Father's repeated harassment," but also determined that "Mother knowingly put Father in a position where he was in apprehension of being arrested on August 27, 2019 and which was likely to and did provoke a disorderly response." The court therefore entered a PFA order against Mother, which prohibited Mother from having any adverse contact with Father for six months. Father sought reargument, which the Family Court denied, holding that

Father's motion sought to relitigate issues that had already been addressed or related to matters from years earlier. Father has appealed to this Court.

(5) In an appeal from a Family Court order, this Court reviews the facts and the law as well as the inferences and deductions made by the judge.[2] If the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings to assure that they are sufficiently supported by the record and are not clearly wrong.[3]

(6) In order to grant a protective order after a PFA hearing, the Family Court must find by a preponderance of the evidence that domestic violence has occurred.[4] A person commits domestic violence against a former spouse if the person "[e]ngag[es] in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response."[5]

(7) After careful consideration of Father's arguments and the record on appeal, we conclude that the judgment of the Family Court should be affirmed. Father asserts that the Family Court made erroneous factual findings and contends that Mother has made false accusations in order to gain custody of the Child. We

---

[2] *Stuart v. Stuart*, 2017 WL 1090543, at *1 (Del. Mar. 22, 2017).
[3] *Id.*
[4] 10 *Del. C.* § 1044(b).
[5] 10 *Del. C.* § 1041(1)(d), (2)(b).

conclude that the Family Court's findings were not clearly erroneous. The court reviewed the parties' text messages and could appropriately determine that Father "[e]ngag[ed] in a course of alarming or distressing conduct in a manner which was likely to cause fear or emotional distress or to provoke a violent or disorderly response."[6] Moreover, to the extent that the court's determination of facts turned on the credibility of the witnesses at the hearing, we will not substitute our opinion for that of the Family Court.[7] At the hearing and in in filings in Family Court and this Court, Father repeatedly focuses on issues that have been addressed in past rulings of the Family Court and this Court; the Family Court appropriately limited the factual issues to be addressed at the hearing to the more recent issues that formed the basis of the petitions before the court.

(8) Father also contends that the Family Court erroneously altered the parties' custody and visitation arrangements as a result of the PFA hearing. The PFA statute provides that, after consideration of a petition for a protective order, the Family Court may "[g]rant temporary custody of the children of the parties to the petitioner . . . . [and] may provide for visitation by separate interim visitation order pursuant to Title 13, which order shall be binding upon and enforceable against both parties. Such interim visitation order may include third-party supervision of any

---

[6] *Id.*

[7] *Shimel v. Shimel*, 2019 WL 2142066, at \*2 (Del. May 14, 2019).

visitation, if necessary."[8] We find no error in the court's entry of temporary custody and vitiation provisions and note that the order "strongly urged" the parties "to file an appropriate petition for a full determination on the merits" concerning custody and visitation.

(9) Finally, Father argues that the same few judicial officers continue to consider the parties' disputes, resulting in "a pre-existing bias that impairs" the judicial officers' ability to be "unbiased arbiters of the truth." This argument also fails to establish a basis for reversal. Family Court judges frequently preside over multiple disputes by the same parties, and the "fact that a judge has ruled adversely to a party does not establish bias against that party."[9] Moreover, the Family Court has made rulings adverse to both Father and Mother in this case, including in the orders that are presently on appeal. The Family Court's determination that the gravity of Father's conduct exceeded that of Mother's does not demonstrate bias.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[8] 10 *Del. C.* § 1045(a)(5).
[9] *Layton v. Layton*, 2019 W 2078346, at *3 (Del. May 10, 2019).

6